RECEIVED

JUL 1 8 2013

DEBORAH S. HUNT, Clerk

FILED

JUL 1 8 2013

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Appeal No. 13-5586

SHERYL TAYLOR

Plaintiff-Appellant,

v.

TIMOTHY GEITHNER, SECRETARY
Department of the Treasury

or

JACOB LEW, SECRETARY
Department of the Treasury

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Tennessee, Western District in 08-2735
Judge Samuel H. Mays, Jr.

## APPELLANT'S PETITION FOR EN BANC FOR THE WRIT OF MANDAMUS

Sheryl Taylor
PO Box 897
Memphis, TN 38101

Total pages including the cover sheet: 8

RECEIVED

JUL 18 2013

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SHERYL TAYLOR                                    )
    Appellant                                    )
        v.                                    )    APPEAL NO. 13-5586
                            )
DEPARTMENT OF TREASURY                   )
    Appellee                                    )

---

## APPELLANT'S REQUEST FOR PETITION FOR EN BANC REGARDING THE WRIT OF MANDAMUS

---

The Appellant respectfully files this request to the Court. The United States Court of Appeals for the Sixth Circuit reversed the District's Court order that granted summary judgment for civil action 08-cv-2735. The United States Court of Appeals for the Sixth Circuit remanded the civil action to the District Court on January 2, 2013. The appeal number was 11-6122.

Discovery and depositions have been completed. The next step is pretrial conference and trial. The District Court denied the Appellant's motion for an appointment of counsel on February 27, 2013, April 30, 2013 and May 2, 2013. (Doc. 112, 131 & 134.) **Final judgment without counsel will cause irreparable harm to the Appellant.** The Appellant is seeking relief before the District Court for a civil action based on Title VII of the Civil Rights Act of 1964.

The Appellant filed a motion on April 26, 2013 to stay all proceedings at the District Court because the Appellant timely filed an appeal. (Doc. 128.) The Appellant filed a notice of an appeal on April 26, 2013. (Doc. 129.) On April 30,

2

2013, the District Court denied the Appellant's motion to stay all proceedings. (Doc. 131.) On May 2, 2013, the District Court denied the Appellant's motion to stay all proceedings. (Doc. 134.) The Appellant petitioned the Clerk at the District Court to forward the entire record to the Court of Appeals for the Sixth Circuit.

The Appellant, Sheryl Taylor, is without counsel. There is a prejudice toward the Appellant for a lack of counsel. The Appellant is unemployed through no fault of the Appellant. The Appellant was approved for Family Medical Leave based on the Family Medical Leave Act (FMLA).The Appellant does not have the mental capacity to litigate a petition for en banc without counsel.

There are seven (7) federal district courts in the state of TN. Local Rule 83.7 references a district wide Civil Pro Bono Panel for the District Court. On February 27, 2013, the Appellant filed a motion for the District Court to release the names of all lawyers on the Court's Civil Pro Bono Panel. The District Court denied the motion and opinionated: "the Court has no such panel." (Doc. 134.)  The Appellant is perplexed on the order of the District Court referencing the Court's Civil Pro Bono Panel.

The Appellant seeks an en banc of the writ of mandamus because the panel decision conflicts with a decision of the United States Supreme Court, the U.S. District Court for the District of Columbia, U.S. District Court for the District of Maryland, the U.S. District Court for the Northern District of Illinois, and the Fifth (5th) Circuit Court of Appeals.

3

On January 10, 1995, the U.S. District Judge Stanley S. Harris, for the U.S. District Court for the District of Columbia opinionated former federal employees are entitled to counsel and have a right to counsel. Matthew Fogg was appointed counsel before final judgment. Fogg successfully prevailed with a court appointed counsel. The civil action was Fogg v. Gonzales, 94-cv-2814. Fogg is a member of a protected class and he sought relief based on Title VII of the Civil Rights Act of 1964.

On June 25, 1990, the United States Magistrate Judge Clarence E. Goetz, for the U.S. District Court District of Maryland, appointed counsel to Deborah Sue Pagana-Fay when she sought relief for Title VII. Deborah Sue Pagana-Fay successfully prevailed before a jury with counsel.  The civil action was Pagana-Fay v. Washington Suburban Sanitary Com'n *797 F.Supp. 462 (1992)*. The District Court of Maryland did not opinionate an appointment of counsel is appealable after final judgment.

On August 25, 1983, Judge Marshall, for the United States District Court for the Northern District of Illinois, appointed counsel to Cynthia Gilardi for civil action Gilardi v. Schroeder 672 F.Supp.1043 (1986).  Cynthia Gilardi was seeking relief based on Title VII. Cynthia Gilardi successfully prevailed with an appointment of counsel before a jury. Cynthia Gilardi is a white citizen. The civil action was

4

Gilardi v. Schroeder 672 F.Supp.1043 (1986). The District Court for the Northern District of Illinois did not opinionate an appointment of counsel is appealable after final judgment.

On February 17, 2012, Chief Judge James F. Holderman, for the United States District Court for the Northern District of Illinois, appointed counsel to James Henders. James Henders was a juror and he advised Judge Holderman that his employment was terminated because of his jury service. The civil action was James Henders v. HHGregg Appliances, Inc., 12-cv-1147. James Henders successfully prevailed with an appointment of counsel. The U.S. District Court for the Northern District of Illinois did not opinionate an appointment of counsel is appealable after final judgment.

The United States Court of Appeals for the Fifth (5th) Circuit opinionated in Sanders v. Russell, 401 F.2d 241, 12 Fed.R.Serv.2d 1395, federal litigants have a right to counsel of their choice for civil rights cases. The Court is silent on the Appellant's right to counsel of her choice for a Title VII civil action.

The Court is silent on the issue of the Appellant's First (1st) Amendment petition for access to federal funds to secure counsel. The Court is silent on the ministerial duty of the defendant/appellee to appoint or assign counsel to the Plaintiff/Appellant by releasing and equally distributing its federal funds to the Appellant/Plaintiff to secure counsel.

5

The Court is silent on the property of federal funds and the intent of Congress that federal funds are equally distributed to unrepresented federal and former federal employees seeking relief for Title VII civil actions. The Court is silent on the landmark decision of the U.S. Supreme Court in United States v. Windsor. The Supreme Court ruled a ban on federal benefits to same sex marriages is unconstitutional. The Court is silent on the constitutional claim that federal and former federal employees that are members of a protected class before the District Court are denied counsel through the Court's Civil Pro Bono Panel and denied access to federal funds to secure counsel.

The Court is silent on the intent of Congress for an appointment of counsel for Title VII civil actions before federal courts in Southern states. The Court is silent on the intent of Congress regarding the equal appropriation of federal funds to federal employees and former federal employees that are members of a protected class seeing relief for Title VII civil actions before federal courts in Southern states.

Federal courts in Northern states do appoint counsel to federal employees and former federal employees that are members of a protected class seeking relief for Title VII civil actions. Federal courts in Southern states do not appoint counsel to federal employees and former federal employees that are members of a protected class seeking relief for Title VII civil actions.

6

Consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions; and the proceeding involves one or more questions of exceptional importance and it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals and the U. S. Supreme Court that have addressed the issue.

The Appellant cannot try the case without counsel. The Appellant cannot select a jury. The Appellant cannot prepare jury instructions. The Appellant has a right to counsel and an entitlement to counsel because: (1) the case will require the testimony of expert witness; (2) the Appellant cannot obtain counsel without the Court's assistance; (3) the case is likely to turn on credibility determinations. Most important, the Appellant's claim has merit in fact and law based on the fact the United States Court of Appeals for the Sixth Circuit reversed the District Court's order granting summary judgment. There is no legal remedy for the Appellant.

Last, the Appellant cannot properly make a legal argument before the Court without counsel. However, the Appellant has made an argument she is entitled to federal funds to secure counsel. The landmark decision of the United States Supreme Court in U.S. v. Windsor is paramount to the Appellant's petition for a writ of mandamus. Federal funds cannot be denied to a select group. Furthermore, the Appellant cannot make a properly legal argument before the Court without counsel regarding the entitlement to federal funds.

7

On August 21, 1995, U.S. Magistrate Judge James Allen for the U.S. District

Court for the Western District of TN opinionated Sophia Shore could not litigate a

civil action against Federal Express Corporation pro se. U.S. Magistrate Judge

James Allen stated two (2) times in his findings: "IT IS CLEAR THAT MS.
SHORE COULD NOT HAVE HANDLED THIS PROSE....THIS COULD NOT
HAVE BEEN HANDLED BY MS. SHORE PRO SE."

Sophia Shore was seeking relief based on Title VII of the Civil Rights Act of 1964.

Sophia Shore was awarded damages and cost. Sophia Shore filed a motion for

sanctions for attorney's fees and the District Court awarded Sophia Shore

attorney's fees. The District Court found Federal Express discriminated against

Sophia Shore based on a bench verdict. Sophia Shore is a white citizen. The civil

action was Sophia Shore v. Federal Express Corporation, 81-cv-2402. The

Appellant is similarly situated as Sophia Shore. The Appellant includes Exhibit 2,

G, L and D which is part of the record for Sophia Shore.

Respectfully submitted,

Sheryl Taylor
PO Box 897
Memphis, TN 38101

## CERTIFICATE OF SERVICE

I, certify that a copy of the brief was sent to the opposing counsel Harriett Halmon
167 N Main St Ste 800 Memphis, TN 38103, via U.S. Mail on 17th day of July
2013.

Sheryl Taylor

No. 13-5586

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jul 16, 2013*
DEBORAH S. HUNT, Clerk

In re: SHERYL TAYLOR,                    )
                                         )        O R D E R
        Petitioner.                      )


Before:  SILER, CLAY and KETHLEDGE, Circuit Judges.


        Sheryl Taylor petitions for a writ of mandamus, asking this Court to compel the district court

to appoint counsel to represent her in her civil action before the district court.  She also moves to

supplement her petition.  In the tendered supplement, she details her lack of knowledge about

prevailing law and prior statements made by various participants in her case that support her request

for the appointment of counsel.  Finally, she moves for the appointment of counsel to represent her

on her mandamus petition.

        As an initial matter, the appointment of counsel is not warranted here.  This is not a complex

matter, and Taylor has ably represented herself, evidenced by her filing of a supplemental petition

that sets forth numerous authorities and arguments in support of her position.  *See Lanier v. Bryant*,

332 F.3d 999, 1006 (6th Cir. 2003).

        "'[M]andamus relief is an extraordinary remedy.'"  *John B. v. Goetz*, 531 F.3d 448, 457 (6th

Cir. 2008) (quoting *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997)).  Because granting

mandamus relief is within our discretion, we may decline relief upon concluding that "it would not

be appropriate under the circumstances" even if Petitioner demonstrated that she was "clear[ly] and

indisputabl[y] entitled to it."  *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 437 (6th Cir. 2009)

(internal quotation marks omitted) (alterations in original).  Mandamus relief is not available when

No. 13-5586
- 2 -

petitioners have "'adequate alternative means to obtain the relief they seek.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078 (6th Cir. 1996) (quoting *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989)). It is also not "intended to substitute for appeal after a final judgment." *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 323 (6th Cir. 2009).

Taylor has an adequate alternative remedy to obtain the relief she seeks, and she is pursuing that remedy—appealing the magistrate judge's order denying the appointment of counsel to the district court. Assuming the district court upholds the magistrate judge's order, she may raise this issue in a direct appeal from the district court's final judgment. *See Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985) (declining to exercise jurisdiction over the denial of the appointment of counsel in a Title VII discrimination suit under the collateral-order doctrine).

The motion to supplement the mandamus petition is **GRANTED**. The motion for appointment of counsel and the petition for a writ of mandamus are **DENIED**.

ENTERED BY ORDER OF THE COURT

Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EXHIBIT 2

SOPHIA SHORE, On Behalf Of Herself
And All Others Similarly Situated,

      Plaintiff,

vs.

FEDERAL EXPRESS CORPORATION,

      Defendant.

)
)
)
)
)
)
)
)
)

*Filed 11/16/84*

No. 81-2402-M

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a civil action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and the Equal Pay Act, 29 U.S.C. §206 (d), in which Plaintiff seeks relief for sex discrimination to which she claims to have been subjected while employed by Defendant. Jurisdiction of the court is properly invoked pursuant to 42 U.S.C. §2000 e - 5(f)(3) and 28 U.S.C. §§1337, 1343.

At the close of Plaintiff's proof, Defendant's Rule 41(b) motion to dismiss Plaintiff's claims under the Equal Pay Act was granted, leaving only the Title VII claims for resolution by the court.

After hearing and considering the testimony and exhibits presented by Plaintiff and Defendant, the court makes the following findings and conclusions:

### FINDINGS OF FACT

1. Plaintiff Sophia Shore is a white female citizen of the state of Tennessee; Defendant Federal Express Corporation is a Delaware corporation with its principal place of business in Memphis, Tennessee and is an employer

CERTIFIED TRUE COPY
J. FRANKLIN REID, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

BY
DEPUTY CLERK

FILED BY _m__ D.C.

EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

'93 APR 9 AM 8: 44

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

SOPHIA SHORE,

    Plaintiff,

VS.                                                     No. 81-2402-M

FEDERAL EXPRESS CORPORATION,

    Defendant.

*This document entered on docket sheet in compliance with Rule 58...*

*PROP on 2/9/93*

RULING ON FRONT PAY AND INTEREST DUE THE PLAINTIFF
FOR A PORTION OF 1988 THROUGH JUNE 30, 1992

BACKGROUND

    This Title VII employment discrimination case was
commenced in 1981.  Sophia Shore, the plaintiff, charged in her
complaint that she had been discharged from Federal Express
Corporation (hereinafter "Fed Ex" or "defendant") on the basis of
gender discrimination.

    After a bench trial, this Court found that the plaintiff
had been discharged because the defendant, acting through its
officers, had indulged in the age old discrimination against
women based upon a double standard.  Plaintiff and her paramour
were both employees of the defendant during a portion of their
illicit sexual affair.  Ultimately, the paramour was promoted to
an officer position of the defendant which included a supervisory
role over the section of the company headed by the plaintiff.  He
undertook to terminate the affair; however, disruption ensued
resulting in his retention as an officer and her discharge from
the employment of the defendant.

CIV 31
Rev 7/82)

## JUDGMENT IN A CIVIL CASE

| **United States District Court** | DISTRICT |
|---|---|
| | Western District of Tennessee |

| CASE TITLE | DOCKET NUMBER | |
|---|---|---|
| Sophia Shore | C-81-2402-M | **EXHIBIT L** |
| v. | NAME OF JUDGE OR MAGISTRATE | |
| Federal Express Corporation | Robert M. McRae, Jr. | |

☐ **Jury Verdict.** This action came before the Court and a jury with the judicial officer named above presiding. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial ~~or hearing~~ before the Court with the judge ~~(magistrate)~~ named above presiding. The issues have been tried ~~or heard~~ and a decision has been rendered.

### IT IS ORDERED AND ADJUDGED

that judgment be and is hereby awarded the plaintiff in the total amount of $157,829.00, and an award of costs and attorneys' fees as shall be determined by consent of the parties, or if no agreement is reached, by the Court.

APPROVED:



_____
U.S. DISTRICT JUDGE

FILED
JUL 9 1984
CLERK, U.S. DIST. COURT
WESTERN DIST. OF TENN.

This document entered on docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on ___7/9/84___

62

| CLERK | | | DATE |
|---|---|---|---|
| J. Franklin Reid | | | 7/9/84 |
| (BY) DEPUTY CLERK | | | |

EXHIBIT D

FILED BY _____ D.C.

95 AUG 23 PM 2: 36

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

95 AUG 23 PM 2: 36

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

```
SOPHIA SHORE,                    *
                                 *
        Plaintiff,               *
                                 *
VS.                              *        No. 81-2402-H/A
                                 *
FEDERAL EXPRESS CORPORATION,     *
                                 *
        Defendant.               *
                                 *
```

PROPOSED FINDINGS OF FACT, PROPOSED CONCLUSIONS OF LAW,
AND RECOMMENDED DISPOSITION

Before the court is the affidavit of Richard B. Fields, attorney, seeking enforcement of his attorney's lien against plaintiff Sophia Shore. This affidavit was filed on May 26, 1995, and will be treated as a petition for enforcement of an attorney's lien. Plaintiff Sophia Shore, who now has different counsel, has contested the validity of the lien, and the amount of attorney's fees claimed.

This litigation has been in this court for a long time. On three (3) occasions, decisions of this court have been appealed to the United States Court of Appeals for the Sixth Circuit. Plaintiff has gone through five (5) lawyers (Dan Norwood and Steve Shields; Kathryn Carlyle; Everett Gibson; Gail Mathes; and Richard Fields), and presently has James F. ("Tim") Schaeffer as her attorney.

EXHIBIT D

Plaintiff Sophia Shore was, in 1987-1989, represented by Everett Gibson, attorney of the Memphis Bar. In 1989, Ms. Shore received an award from this court, against defendant Federal Express Corporation, of approximately $71,645.00. There remained a dispute regarding the interest on this award.

As was the case with her past attorneys, Ms. Shore became dissatisfied with the manner in which Mr. Gibson was representing her interests, and retained Ms. Gail Mathes of the Memphis Bar (apparently without the initial knowledge of Mr. Gibson), in 1990. Ms. Mathes then completely took over the representation of Ms. Shore in this litigation.

Some time in 1990, Federal Express filed a motion in this case to terminate Ms. Shore's front pay, arguing that she improperly resigned from a job as executive legal secretary for the Memphis law firm of Udelsohn, Blaylock, and Marlow. Federal Express's theory for this relief was that it would be "inequitable" to be required to pay plaintiff front pay, because her voluntary resignation from her job at the Udelsohn firm only twelve (12) days after an order of court establishing a formula for the payment of front pay was "in bad faith" and was a "contempt" of court. Apparently Federal Express, after filing their motion to terminate front pay in 1990, ceased making front pay payments to Ms. Shore.

EXHIBIT D

After Ms. Mathes became Ms. Shore's attorney, preparations for the hearing on Federal Express's motion to terminate began.  For various reasons (including health problems for Ms. Mathes, and some unexplained failures to appear at depositions by Ms. Mathes), the hearing on this motion was postponed on numerous occasions.

Finally, Judge McRae set a hearing in June of 1992.  Ms. Shore became convinced that Ms. Mathes was not going to be ready for this hearing, and would again be asking for a continuance. Ms. Shore also was in need of funds at the time.  Ms. Shore therefore contacted Richard B. Fields, an attorney of the Memphis Bar, in April of 1992, in a panic about her difficulties in having this hearing and her concern about its possible continuance.

Mr. Fields has been practicing law in Memphis since 1976, and specializes in civil rights litigation, representing plaintiffs.  Mr. Fields testified that he seldom is paid a fee other than by award of court and/or from a contingent fee contract with plaintiffs who hire him (with on occasion a small cash payment at the start).  Mr. Fields testified that a standard contingent fee arrangement in such cases would be 33 1/3%, up to 45%, plus expenses.  He also testified that his fees are seldom fully paid by award of court, because of the requirement that a plaintiff must prevail on all issues.

EXHIBIT D

Mr. Fields was aware that the hearing on the motion by Federal Express to discontinue payment of front pay was set in mid-June of 1992. Nonetheless, he agreed to represent Ms. Shore.

There is a dispute about the arrangement between Ms. Shore and Mr. Fields. No written contract was provided the court. Mr. Fields testified that he and Ms. Shore agreed at their first conference that he would receive 1/3 of funds collected from Federal Express. He did say that he told Ms. Shore that if the matter at issue (Federal Express's request to cancel front pay, and recovery of front pay being withheld by Federal Express) were settled immediately, other fee arrangements would be made. Ms. Shore denies that there was an agreement at that time, and indicated that she was awaiting a written proposal from Mr. Fields regarding a fee arrangement.

A review of the letters passing between plaintiff and Mr. Fields (at least those which were filed with this court) convinces me that there was an initial agreement that 1/3 would be paid Mr. Fields from funds collected from Federal Express. However, there is no proof to assist the court in determining whether this arrangement only related to the motion by Federal Express to discontinue payment of front pay, and the recovery of past due front pay, or whether it related to the remaining years for which Ms. Shore was to collect front pay (to age 65). Further, there was some confusion about the amount to be paid if the matter were settled in a reasonably short time.

Mr. Fields thereafter, on May 18, 1992, wrote a letter to Senior District Judge Robert M. McRae, advising of his

4

EXHIBIT D

representation of Ms. Shore.  Judge McRae, who had seen four (4)

or five (5) other lawyers representing Ms. Shore, and had

experience with those lawyers having to spend time bringing

themselves up to speed, was irritated and, on May 21, 1992, wrote

a letter to Mr. Fields (Exhibit 1, evidentiary hearing of July

12, 1995).  This letter had some bite to it.

> In this letter, Judge McRae said the following:

> > "I have been unable (sic) express my thoughts
> > about how unreasonable Mrs. Shore's conduct has
> > been with regard to her claim for front pay and at
> > the same time to advise the defendant that I do
> > not see how I can discontinue the payment of front
> > pay even though I am certainly not going to order
> > pay for her for not working. . . "

Judge McRae also advised Mr. Fields that he should not count on a

fee being awarded against Federal Express for Mr. Fields or Ms.

Mathes.

Judge McRae set a preliminary pre-hearing conference for

June 3, 1992, and Mr. Fields and Ms. Shore attended.  A review of

the transcript of this conference indicates that it was fairly

extensive (both in time and in scope).

It is fair to say that Mr. Fields was presented with a

monumental task as a lawyer.  He was required to go through all

necessary documents in a case that had been going on since 1981;

that had had at least three (3) trials at the District Court

level; that had had three (3) appeals to the Sixth Circuit Court

of Appeals; and that had a mid-June trial setting.  This was to

be done, even though Mr. Fields was first seen by Ms. Shore in

EXHIBIT D

April of 1992.  Mr. Fields also was required to be fairly conversant with all the issues in this litigation at the above-mentioned conference of June 3, 1992, and deal with a judge who was somewhat put out at his client.

At this June 3, 1992 conference, Judge McRae reviewed his most recent front pay order, which, in summary, provided that Federal Express was to pay Ms. Shore the difference between the salary of a "comparable" employee at Federal Express and the salary Ms. Shore was earning as an executive secretary for the Udelsohn law firm (unless, of course, Ms. Shore found employment which would pay her more than she was earning at the Udelsohn firm).  This was to be paid until Ms. Shore reached retirement age (65), unless she became disabled.  Apparently this matter was to be reviewed every six (6) months, and a check issued to Ms. Shore.

Judge McRae indicated at this conference that he was strongly inclined to deny Federal Express's motion to cut off all front pay, simply because Ms. Shore had quit working for the Udelsohn law firm, and was inclined to award Ms. Shore the difference between the "comparable" and what she would have earned if she had stayed at the Udelsohn law firm.  He did say, however, at this June 5, 1992, conference, that:

> "I haven't changed my thought on it (regarding
> defendant's motion to cut off all future front
> pay, and pay no back front pay for the period
> after Ms. Shore quit working for the Udelsohn law
> firm), but I will say I will go into this prepared
> to change my mind. . . "

Transcript of preliminary conference, pp. 36-37.

6

EXHIBIT D

Thus, Mr. Fields was faced with the task of defending against the motion by Federal Express to cut off future front pay, and the task of trying to recover past front pay for the period after Ms. Shore quit working for the Udelsohn law firm. It is clear that Ms. Shore could not have handled this pro se, and it is also clear that Federal Express was seriously pressing its arguments in this regard.  It is also clear that Judge McRae was quite unhappy with Ms. Shore for quitting the job with the Udelsohn law firm.

The trial of this matter consumed two (2) full days (June 18 and 19, 1992), and the transcript of these proceedings added up to 538 pages and four (4) volumes.  A reading of the transcript indicates a hotly contested hearing, with constant squabbles between counsel, and a judge heavily involved in the proceeding, making the trial difficult for both lawyers.

Further, there was a post-hearing dispute as to the language of the final judgment or order by Judge McRae.  In fact, Judge McRae, after reading the transcript of the proceedings, changed his previous oral opinion in certain material aspects, in large part after hearing from counsel for both sides.  This could not have been handled by Ms. Shore pro se.

As indicated, the trial ended on June 19, 1992, and Judge McRae, at the close of the proof, made an oral ruling, in which he denied the motion by Federal Express to cut off all front pay; continued the previous ruling under which Ms. Shore was to receive front pay based upon the difference between the "comparable" Federal Express employee and the amount Ms. Shore

7

EXHIBIT D

would have earned had she stayed at the Udelsohn law firm.  He
also stated certain general principles by which he would award
back front pay against Federal Express for the period from when
Federal Express stopped paying Ms. Shore front pay and the time
of the judgment.  Finally, Judge McRae made some observations
about prejudgment interest and postjudgment interest.

As indicated, delay in the entry of a final judgment
(which would result in Ms. Shore receiving payment) was caused by
disputes between counsel as to the nature of Judge McRae's
ruling; a delay in obtaining a transcript of these proceedings
(apparently caused by a misunderstanding as to who should request
this transcript); and a review of this transcript by Judge McRae,
resulting in his changing his mind on certain questions regarding
interest.

On February 9, 1993, Judge McRae filed his "Ruling on
Front Pay and Interest Due the Plaintiff For a Portion of 1988
Through June 30, 1992".  This was the ruling that varied from his
oral ruling of June 19, 1992.  It is apparent that Mr. Fields
obtained a copy of this February 9, 1993 Ruling, and went over it
with Ms. Shore.  On March 18, 1993, Ms. Shore wrote Mr. Fields a
letter, indicating that she felt that the transcript of the June
18-19 trial contained many inaccuracies which might have led to
Judge McRae's corrected ruling.  Ms. Shore requested Mr. Fields
to see that these errors were corrected, and Mr. Fields allegedly
refused.  Further, there is a discussion in this letter about
some conversations between Mr. Fields and Ms. Shore regarding the
amount of Mr. Fields' fee, indicating that there was not yet a

EXHIBIT D

meeting of the minds on the question of fees.  There is no evidence that Mr. Fields wrote Ms. Shore back, disagreeing with the contents of this letter.

Further, on March 18, 1993, Ms. Shore wrote Mr. Fields a letter, asking him to make sure that "nothing in that proposed judgment (required by Judge McRae in his Ruling of February 9, 1993) precludes me from filing an appeal".

On March 29, 1993, Ms. Shore wrote Mr. Fields a letter, asking him for documents and asking that the fee arrangement be finalized and committed to writing.  There is no evidence that Mr. Fields responded to this letter in writing.

On March 31, 1993, Ms. Shore again wrote Mr. Fields, rehashing her complaints about the inaccuracies in the transcript of the trial, resulting in alleged inaccuracies in Judge McRae's Ruling of February 9, 1993.  She also indicated in this letter that she believed that the first fee arrangement (between her and Mr. Fields) of 1/3 of any recovery, to include whatever Gail Mathes should receive, should be re-instated, and that, in return, "the errors in the findings, transcript and reinstatement of lost interest should be aggressively pursued".

At some time prior to March 31, 1993, a "Proposed Judgment" form was circulated among the lawyers for Ms. Shore and Federal Express.  There is no proof as to who originally drafted it.  It was, however, signed by counsel for Federal Express and by Mr. Fields.  There is a factual dispute as to whether Ms. Shore saw this "Proposed Judgment" before it was submitted to Judge McRae for his approval.  Mr. Fields testified that he

9

EXHIBIT D

mailed the "Proposed Judgment", with a cover letter, to Ms.
Shore, and discussed it with her, obtaining her approval.  Ms.
Shore testified that she did not recall seeing it prior to entry.
When pressed, she admitted that she did not know whether she had
seen it or not, but said that, if she had, it would have been in
longhand.  Ms. Shore said she had emphasized to Mr. Fields that
she wanted to see this Proposed Judgment prior to its entry.  Ms.
Shore testified that, at about that time, she was extremely
upset, and did not have all her faculties about her.  To the
extent that it may be important to the outcome of this dispute,
it is submitted that it is more credible that Mr. Fields went
over the "Proposed Judgment" with Ms. Shore prior to signing it
and submitting it to Judge McRae.

     In this "Proposed Judgment", it was indicated that
"Counsel for the parties have agreed that Richard B. Fields is
entitled to $5,000.00 in attorneys fees as a result of this
hearing.  Ms. Gail Mathes may submit an attorney fee application
within 10 days".  Mr. Fields testified that this was a settlement
(as to Federal Express) of Ms. Shore's claim for an award of
attorneys fees against Federal Express.  In a supplemental
affidavit, Mr. Fields indicated that he encouraged Ms. Shore to
allow him to apply for his full fees, but Ms. Shore insisted that
he accept Federal Express's settlement offer because "she was in
desperate need of funds."  Mr. Fields also stated, in this
affidavit, that he explained to Ms. Shore that if he recovered
more fees, Ms. Shore would pay less on their contingency fee
arrangement.  Ms. Shore has filed an affidavit controverting

10

EXHIBIT D

these observations by Mr. Fields, stating that she "had no knowledge at the time that negotiations were occurring or had occurred concerning attorney fees", and denying that she ever indicated that she was being in any way "motivated by desperation for money."  To the extent that this dispute needs resolution, it is submitted that the version by Mr. Fields is the more credible.

From all the testimony, it appears that Ms. Shore was, as Mr. Fields put it, "micromanaging" this litigation.  It also appears that, at this time, Ms. Shore was in need of money, and was pressing to obtain money from Federal Express as a result of her success at this trial.  However, it also appears that Ms. Shore was not too happy with Judge McRae's ruling, both as to the method used in calculating the salary (and increases) of the "comparable" employee, and as to the question of interest.

On April 3, 1993, Ms. Shore wrote Mr. Fields and again asked for certain documents and indicated concern that some judgment, prepared by Federal Express, might be entered by Judge McRae in such a way as to cause Ms. Shore's right to appeal to "be irrevocably lost".  She also expressed dissatisfaction with Judge McRae's later Ruling, saying that some of her "hard fought victory", outlined in Judge McRae's earlier oral ruling, had been "lost in the finding".

On April 2, 1993, Mr. Fields wrote Ms. Shore and sent her a copy of the "Order and Judgment" that he had received in the mail.  Judge McRae had received the "Proposed Judgment", approved by Mr. Fields and counsel for Federal Express.  Apparently he did not like the language contained therein, but used it as the basis

11

EXHIBIT D

for finding that the amount of back front pay due ($85,394.00), and attorneys fees, had been agreed upon by the parties. Drafting his own Judgment, Judge McRae, on March 31, 1993, entered the same.  In this Judgment, Judge McRae stated that no prejudgment interest was awarded, but that postjudgment interest was awarded "at the rate applicable at the time of the entry of the judgment".

In Mr. Fields' letter of April 2, 1993, he indicated that it was his understanding that Federal Express was not inclined to appeal, but that he would know 30 days after entry of the judgment.  He also stated that, if there was no appeal by Federal Express, he did not think the errors Ms. Shore believed occurred would have any bearing on the case.

It is important to note that, in Mr. Fields' letter of April 2, 1993, he stated the following:

> "I accept your wish to work for one-third of the judgment and I will negotiate with Gail over her fees."

On April 5, 1993, Ms. Shore wrote Mr. Fields, confirming that she had told him the previous Saturday not to accept a check from "the plaintiff" (obviously meaning the defendant Federal Express).  Ms. Shore also advised Mr. Fields that she intended to appeal the decision of Judge McRae, and asked Mr. Fields to "be sure that (the notice of appeal) is filed before April 10, 1993 to ensure that my rights in this matter are protected".

EXHIBIT D

Mr. Fields testified that when Ms. Shore called him and indicated that she wished to appeal, he told her he thought this was crazy, because Federal Express might then appeal, jeopardizing the award she had received against them. Ms. Shore indicated to Mr. Fields that she wished to appeal the entire decision, not just the decision on prejudgment interest.

Ms. Shore was apparently dissatisfied with this advice from Mr. Fields, and deeply concerned that her appellate rights might be irretrievably lost. She therefore contacted her present lawyer, James F. ("Tim") Schaeffer, and, on April 9, 1993, Mr. Schaeffer contacted Mr. Fields regarding Ms. Shore's appeal. Mr. Fields wrote a letter to Ms. Shore on April 9, 1993, again advising her against an appeal, and indicating that he would withdraw from the case, and would assert a lien for one-third of the total award as well as out-of-pocket expenses.

There has been some unpleasantness after this time. Ms. Shore filed a disciplinary complaint against Mr. Fields. Mr. Fields has complained that Ms. Shore improperly took _all_ of his files, including some copies of letters he wrote her, and has not returned all of them. These are, however, it is submitted, extraneous to these proceedings.

This matter was indeed appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed Judge McRae in all respects except as to his refusal to award pre-judgment interest.

EXHIBIT D

Ms. Shore has taken the position that there was in fact
no contract between her and Mr. Fields, and that Mr. Fields is
not entitled to any fees (other than the $5,000.00 fee awarded
him by the court) because he failed to adequately represent her;
because Judge McRae had already decided this matter favorably to
Ms. Shore prior to any of these proceedings; because he failed to
submit his time records to Judge McRae and request that he award
attorneys fees; and because the $5,000.00 awarded is a sufficient
attorneys fee in this matter.

One question I had at the time was the effect of the
settlement of $5,000.00 for attorneys fees, entered into between
Federal Express and Mr. Fields.  However, it seems clear from the
testimony and the affidavits that this was to settle the dispute
between Ms. Shore and Federal Express about the amount Federal
Express was required to reimburse Ms. Shore for her attorneys
fees in this aspect of the ongoing litigation.

Attorneys fees are awarded in civil rights cases against
the unsuccessful defendant pursuant to 42 U. S. C. §1988(b).  The
aim of §1988 is to "enable civil rights plaintiffs to employ
reasonably competent lawyers without cost to themselves if they
prevail".  Venegas vs. Mitchell, 495 U. S. 82, 86 (1990).  Sec.
1988 makes the prevailing party, rather than the attorney,
eligible for a discretionary award of attorney's fees.  Venegas,
at p. 87.  It is the party's right to waive, settle, or negotiate
that eligibility.  Id, p. 88.  Sec. 1988 controls what the losing
defendant must pay, not what the prevailing plaintiff must pay
his lawyer.  Venegas, at p. 90.

14

EXHIBIT D

Therefore, it is submitted that the fact that Mr. Fields only received an award of $5,000.00 by the court does not prevent him from collecting an additional fee from Ms. Shore, provided that any fee to which Mr. Fields is entitled to receive from Ms. Shore is reduced by the court award.  It is submitted that the credible evidence has shown that Ms. Shore insisted that her claim for attorneys fees against Federal Express be settled for the sum of $5,000.00, so that she could receive payment on the judgment.

At bottom, it is submitted, this is a dispute between a client and her attorney over whether the attorney should receive any attorney's fee out of a sum of money collected on behalf of the client, and, if so, the amount of such attorney's fee.  Such a dispute should, it is submitted, be resolved by turning to the applicable State law (in this case. the law of Tennessee).

An attorney is entitled to compensation in the amount agreed upon by contract, provided that the contract is fair at its inception, and entered into in good faith.  Peoples National Bank of Washington vs. King, 697 S. W. 2d. 344, 346 (Tenn. 1985). Further, an attorney is entitled to a lien upon the client's recovery for the amount of compensation settled upon by contract. King, at p. 347.

In a case where the parties do not have a clear understanding about the fee, the lawyer should be compensated on the basis of a reasonable fee for the services rendered.  In re Estate of Davis, 719 S. W. 2d. 526, 528 (Tenn. App. 1986).  A "reasonable fee" generally amounts to payment for the hours spent

EXHIBIT D

on the various matters undertaken for the benefit of the client, at the normal hourly charge for ordinary legal services as of the time the services were rendered. Davis, p. 529.

The rule in Tennessee is that where an attorney is discharged without cause, he may collect either on the basis of quantum meruit or on his contract, whichever is higher. Adams vs. Mellen, 618 S. W. 2d. 485, 488 (Tenn. App. 1981). However, where the client is found to have cause for discharging his attorney, the attorney may collect either on the basis of quantum meruit or on his contract, whichever is less. Adams, at p. 488.

Misconduct by an attorney in violation of a statute, or acts against public policy, or in breach of an attorney's fiduciary duty to his client, or breach of faith, or malfeasance, may support a complete forfeiture of attorneys fees. Crawford vs. Logan, 656 S. W. 2d. 360, 364 (Tenn. 1983). On the other hand, it is contrary to the law to hold that any misconduct of an attorney, whether intentional or not, whether damaging to the client or not, automatically brings about forfeiture of his fees. Crawford, at p. 365.

It is submitted that the proof fails to establish the existence of a contingent fee contract between Ms. Shore and Mr. Fields, at the time that Mr. Fields provided his services for Ms. Shore. The material terms of the contract (i. e., for the hearing only, or for all future proceedings; for a simple disposition or for a contested disposition;, etc.) were not

EXHIBIT D

established.  In fact, the proof does not even establish that there was an agreement (or meeting of the minds) that Mr. Fields was entitled to 1/3 of the recovery made until _after_ the recovery was made.

In any event, it is submitted that, even if there were a contract, Mr. Fields would only be entitled to a quantum meruit recovery, since he was discharged for cause.  Ms. Shore, it is submitted, made it clear that she was contemplating an appeal, and that she wanted Mr. Fields to protect her right to do so. She later directed Mr. Fields to file a notice of appeal by April 10, 1993, and received from Mr. Fields an indication that he strongly disapproved of any appeal, causing Ms. Shore to be apprehensive that a notice of appeal might not be timely filed. The fact that Ms. Shore was mistaken as to the last date for the filing of a notice of appeal would not be relevant in this case, since her _directions_ (based upon an apparent misunderstanding) were to file by a certain date.  Further, there is no indication that Mr. Fields complied with the requests by Ms. Shore to correct the transcript or submit corrections as to the calculations of the future salary of the "comparable" employee at Federal Express.

Under these circumstances, it is submitted that Mr. Fields would be entitled only to recover on the basis of quantum meruit, unless his misconduct violated a statute, was against public policy, was in breach of his fiduciary duty to his client,

17

EXHIBIT D

or was a breach of faith or malfeasance, in which case he might not be entitled to collect _any_ attorneys fee.  Crawford vs. Logan, 656 S. W. 2d. 360, 364 (Tenn. 1983).

It is submitted that it is clear from the proof in this case that Mr. Fields did nothing in his relationship with Ms. Shore to justify such a finding of harmful misconduct.  None of the matters complained of by Ms. Shore have been shown to have had any effect on the outcome of proceedings in the Sixth Circuit, or for that matter at the hearing before Judge McRae.

For the foregoing reasons, it is submitted that Mr. Fields is entitled to recover reasonable attorneys fees from Ms. Shore on a quantum meruit basis.

The burden of establishing what is a reasonable fee is upon the attorney claiming it, not upon the client.  Adams vs. Mellen, 618 S. W. 2d. 485, 488 (Tenn. App. 1981).

Under the provisions of Rule 8, Rules of the Supreme Court of Tennessee, DR 2-106, Tenn. Code Annot., Tenn. Court Rules, factors to be considered as guides in determining the reasonableness of a fee include the following:

> "(1)  The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

> "(2)  The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

> "(3)  The fee customarily charged in the locality for similar legal services.

> "(4)  The amount involved and the results obtained.

EXHIBIT D

"(5)  The time limitations imposed by the client or by the circumstances.

"(6)  The nature and length of the professional relationship with the client.

"(7)  The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8)  Whether the fee is fixed or contingent."

The Supreme Court of Tennessee has indicated that these factors should be considered by the court in determining a reasonable attorney's fee.  Connors vs. Connors, 594 S. W. 2d. 672, 676 (Tenn. 1980).

In this case, factors (2) and (6) are not pertinent in assessing a reasonable fee.

This case arguably involves a contingent, rather than a fixed fee, under factor (8), and thus the amount should be larger, having in mind the chancy nature of Mr. Fields recovering anything for his client, and thus for himself as a fee.

Factors (5) and (7) also justify liberality in the award. Mr. Fields has much experience in cases of this sort (civil rights cases) and has acquired an expertise which is widely recognized in the local bar.  Further, when Mr. Fields came into this case, he was given very little time to get up to speed on a case which had a lengthy and complex history.

Factors (1), (3), and (4) will be dealt with together.

EXHIBIT D

Mr. Fields has filed with this court an affidavit, asserting that he spent approximately 62 hours "reviewing the previous record, meeting with my client, preparing documents for trial, and corresponding with opposing counsel".  He further indicates that he spent 20 hours in preparation for, and actual trial of, the hearing which took place on June 18, 1992, and June 19, 1992.  Finally, Mr. Fields claims that he spent 35 hours, from June 20, 1992, until April 5, 1993, in "meetings with Ms. Shore, corresponding with opposing counsel, negotiating the amount due Ms. Shore and attorneys fees, and reviewing the transcript of the hearing."  This totals 117 hours[1] alleged to have been spent by Mr. Fields in this cause, from the time he was hired by Ms. Shore until the time he was replaced by Mr. Schaeffer.

Further, Mr. Fields indicates that his normal hourly rate for civil rights litigation, in 1992 and 1993, was $175.00, and he was in fact awarded $175.00 per hour by United States District Judge Jon Phipps McCalla in another civil rights case for work in 1993 and 1994.

The hours indicated by Mr. Fields times the hourly rate claimed would total $20,475.00.

---

[1]Mr. Fields' affidavit indicates a total of 115 hours. However, this apparently is a result of incorrect addition.

EXHIBIT D

The actual amount collected by Ms. Shore from Federal Express for back front pay was $85,394.00. Ms. Shore also collected $5,000.00 to be applied to her obligation to Mr. Fields for attorneys fees. Mr. Fields also contends that Ms. Shore received further economic benefit, since she is now able to receive front pay until she is 65 (i. e., until the year 2000).

Thus, Mr. Fields claims a right to quantum meruit recovery for attorneys fees in the amount of $15,475.00 (deducting the $5,000.00 already received).

It is submitted that the hours claimed (62), spent in preparing for the trial on June 18 and 19, are clearly reasonable. The possibility of lasting damage to Ms. Shore's financial future was real, and preparation was made difficult because of the relatively short time to prepare and the massive amount of materials already collected in the course of Ms. Shore's prior litigation.

It is submitted that the hours claimed (20), spent in preparation for, and actually litigating, the two (2) day trial on June 18 and 19, are also clearly reasonable. A look at the transcript of these proceedings would indicate two (2) full days of actual court time, and the other hours are reasonable.

It is submitted that the hours claimed (35), spent after this trial, until Mr. Fields was replaced by Mr. Schaeffer, seem excessive. While Ms. Shore was, as Mr. Fields testified, "micromanaging" this case, the trial was over, and the issue left

EXHIBIT D

was obtaining the entry of a final judgment and receiving payment thereunder. Therefore, it is submitted that Mr. Fields should only be allowed to claim fifteen (15) hours for this period.

This would result in a total number of hours for which Mr. Fields would be entitled to quantum meruit recovery of 97.

Mr. Fields claims that he should be entitled to recover $175.00 per hour. This was not, however, a case calling upon special expertise by Mr. Fields. Judge McRae had already indicated that he had made up his mind, subject to the possibility of being convinced otherwise. In fact, Judge McRae ruled essentially as he had indicated he was going to rule (at least on the major issues of whether Ms. Shore should be cut off entirely, and whether she should be allowed to recover back front pay). The questions involved were not particularly novel or difficult. The amount recovered was not, in comparison to other civil rights judgments, substantial, although the effects thereof later on might be said to be important.

Under these circumstances, it is submitted that an hourly rate of $150.00 would be more appropriate.

In light of the foregoing, it is SUBMITTED that Mr. Richard B. Fields, attorney, should be awarded the sum of $9,550.00 ($14,550.00 less the $5,000.00 already collected) out of the sum of $25,000.00, being held in escrow. It is further SUBMITTED that, upon payment of the sum of $9,550.00 to Mr. Fields, his lien should be DISCHARGED.

22

EXHIBIT D

All parties are advised that all objections to this report and recommendation must be filed within ten (10) days or such objections may be deemed waived by the District Court. Additionally, such a failure to file within ten (10) days may be treated as a waiver of the right to appeal the District Court's order hereon. <u>U. S. vs. Walters</u>, 639 F. 2d. 927 (6th Cir. 1981); <u>Patterson vs. Mintzes</u>, 717 F. 2d. 284 (6th Cir. 1983); <u>Thomas vs. Arn</u>, 474 U. S. 140 (1985); see also FED. R. CIV. P. 72(b).

Respectfully submitted this 21st day of August, 1995.

JAMES H. ALLEN
UNITED STATES MAGISTRATE JUDGE

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE

EI 558409 66 US

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code
38671

Day of Delivery
Next □ 2nd □ 2nd Del. Day

Postage
$ 19 95

Date Accepted
7 17 13

Flat Rate □ or Weight

Time Accepted
5:26 □ AM □ PM

Return Receipt Fee
$

Military
Mo. Day □ 2nd Del. Day

Scheduled Time of Delivery
□ Noon □ 3 PM

COD Fee
$

Insurance Fee
$

Int'l Alpha Country Code

Total Postage & Fees
$ 19 95

**FROM:** (PLEASE PRINT)    PHONE (        )

MS. TAYLOR
PO BOX 897
MEMPHIS TN   38101

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811

PRESS HARD. YOU ARE MAKING 3 COPIES.

---

Print postage online - Go to usps.com/postage or

PLEASE PHONE...

PLEASE PRESS FIRMLY

**Flat Rate Mailing Envelope**
*For Domestic and International Use*

*Visit us at usps.com*

---

JUL PROV 17 '13
$ 19 95
0046357-02

UNITED STATES
POSTAL SERVICE
1007

**EXPRESS MAIL**

When used internationally affix customs declarations (PS Form 2976, or 2976A).

Please recycle.

USPS packaging products have been awarded Cradle to Cradle Certification™ for their ecologically intelligent design. For more information go to mbdc.com/usps.

**EP13F**

---

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**PAYMENT BY ACCOUNT**
Express Mail Corporate Acct. No.

Federal Agency Acct. No. or Postal Service Acct. No.

**CUSTOMER USE ONLY**

Delivery Attempt
Mo.  Day  □ AM □ PM

Delivery Attempt
Mo.  Day  □ AM □ PM

Time  □ AM □ PM    Employee Signature

Delivery Date
Mo.  Day    Time  □ AM □ PM    Employee Signature

Mailing Label
Label 11-B, March 2004

**Post Office To Addressee**

**TO:** (PLEASE PRINT)    PHONE (        )

U.S. COURT OF APPEALS
540 POTTER STEWART US. COURT HOUSE
100 EAST FIFTH STREET
CINCINNATI, OH  45202

4 5 2 0 2 +

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.